**BRYANT v. RUCKER, Commander,**
**U. S. Coast Guard.**

**Civ. No. 1012.**

United States District Court
S. D. Alabama, S. D.

March 27, 1953.

310

John H. Tappan, of Pillans, Reams, Tappan, Wood & Roberts, Mobile, Ala., for plaintiff.

Percy C. Fountain, U. S. Atty., Mobile, Ala., for defendant.

THOMAS, District Judge.

The complaint as originally filed was an action for a declaratory judgment brought by three plaintiffs under the terms of Sections 2201 and 2202, Title 28 U.S.C.A. The complaint avers that the plaintiffs are the owners (or masters) of certain vessels which are motor boats as defined by the Motor Boat Act of 1940, sections 526–526t, Title 46 U.S.C.A. It also avers that the boats in question are engaged in the carrying of passengers for hire on fishing trips, and that the defendant, who is the Officer in Charge of Marine Inspection of the Mobile District of the United States Coast Guard, has enforced, and does enforce on the vessels of these plaintiffs Section 4426, a section of Title 52 of the Revised Statutes, section 404, Title 46 U.S.C.A., as amended, and the sections of Title 52 of the Revised Statutes there referred to, generally known as the Steamboat Inspection Laws. Plaintiffs ask of this Court to declare that the Motor Boat Act of 1940, supra, and the Steamboat Inspection Laws, supra, do not both have application to them and to their vessels.

The plaintiffs Graham were dismissed on motion, inasmuch as they were not the *owners* of any boats to which the above mentioned statutes are said to apply.

### Findings of Fact.

Captain Earl Bryant owns and operates the Yacht "Sportsman". The "Sportsman" exceeds 15 gross tons and is used in the carrying of passengers for hire on fishing trips. She is less than 65′ in overall length, excluding sheer. She is operated out of the port of Bayou La Batre in.

Mobile County, within the jurisdiction of the Southern District of Alabama, and within the Mobile District of the United States Coast Guard, of which this defendant is Officer in Charge.

Captain James B. Rucker (Commander at the time this suit was filed) enforces upon the Yacht "Sportsman" the terms and provisions of Section 404 of Title 46, supra, Section 4426 of Title 52 of the Revised Statutes, and therefore the terms and provisions of Title 52 of the Revised Statutes, i. e., the Steamboat Inspection Laws, and the rules and regulations issued thereunder, referred to in said Section 404. He has enforced and does enforce upon the said "Sportsman" this statute pursuant to the authority of his office as Officer in Charge of Marine Inspection of the Mobile District of the United States Coast Guard.

Captain Rucker's official acts are under the supervision and direction of The Commandant, United States Coast Guard, Washington, D. C.

The said Yacht "Sportsman", her tackle and fittings, is and always has been in conformity with the requirements of the Motor Boat Act of 1940. Plaintiff does not protest the application of the said Motor Boat Act of 1940 to the Yacht "Sportsman".

The Yacht "Sportsman" is held by the authorities of the United States Coast Guard to be subject to annual inspection, pursuant to the terms of the Steamboat Inspection Laws, supra. In the past, changes in the construction of the Yacht "Sportsman" have been required as a result of said inspections. These changes have entailed quite a bit of expense to plaintiff Bryant. After the "Sportsman" has met the requirements of inspection, a certificate of inspection is issued which is subject to revocation. A photostatic copy of a certificate of inspection for the "Sportsman" was introduced in evidence, this certificate being valid and outstanding at the time this suit was filed. The certificate is over the signature of the defendant. Among other things, it restricts the time of operation of the "Sportsman" to thirteen hours out of a twenty-four day and to an area of operation within fifteen miles of land between Pensacola, Florida, and New Orleans, Louisiana;

it also restricts to seventeen the number of passengers which the "Sportsman" may carry.

It is against the application of Section 404 of Title 46, supra, and the inspection, changes in construction, and restriction on the manner of operation that this plaintiff protests.

The "Sportsman" is now and has been in compliance with the terms, provisions and requirements of both of the foregoing acts and has not violated the terms of the certificate of inspection issued by the defendant in his official capacity.

Opinion with Conclusions of Law

■ This court has jurisdiction to inquire into the merits of this action by virtue of Section 1337, Title 28 U.S.C.A.

■ It is my opinion that the Yacht "Sportsman" is not subject to Section 404, Title 46, and the Steamboat Inspection Laws there referred to. Said Section 404 includes the following terminology:

"All vessels of above fifteen gross tons carrying freight or passengers for hire, *but not engaged in fishing as a regular business* * * * shall be subject to all the provisions of this section * * *." (Emphasis mine.)

I do not find any interpretation of the phrase "but not engaged in fishing as a regular business"; but if the phrase is to have any meaning at all, it would seem to intend the exclusion of a vessel such as the "Sportsman" from the terms of the section.

It is also my thought that a Yacht such as the "Sportsman", which is subject to the requirements of the Motor Boat Act of 1940, was not intended by the Congress also to be subject to the terms and requirements of the Steamboat Inspection Laws which are said to apply by virtue of said Section 404 which was last amended in 1906. Section 404 is included among the sections of Chapter 14 of 46 U.S.C.A., which Chapter is styled: "Inspection of Steam Vessels". Section 361 of Title 46 is the first section of Chapter 14 and formerly read:

"What are steam vessels. Every vessel propelled in whole or in part by

312

steam shall be deemed a steam vessel within the meaning of this and the following chapter and sections 214 and 215. (R.S. § 4399.)"

Section 361 is also a section of Title 52, Revised Statutes. On June 13, 1933, Section 361 was amended to read as follows:

"Every vessel subject to inspection propelled in whole or in part by steam or by any other form of mechanical or electrical power shall be considered a steam vessel within the meaning of and subject to all of the provisions of this Act. *Provided, however,* That motor boats as defined in the Act of June 9, 1910, are exempt from the provisions of this Act."

The meaning of the word "Act" in Section 361 as amended has been subject to question. The court in the "Ace", Ace Waterways v. Fleming, D.C.N.Y.1951, 98 F.Supp. 666, concluded that the word "Act" had reference to the said Chapter 14. This being the case, motor boats, by specific Congressional Act, are excluded from the provisions of Section 404. It is my opinion that the word "Act" does refer either to the said Chapter 14, or to Title 52 of the Revised Statutes; the conclusion is the same in either event.

Section 526q of Title 46, one of the sections of the Motor Boat Act of 1940, includes the following paragraph:

"Motorboats as defined in this subchapter are hereby exempted from the provisions of section 361 of this title."

The Motor Boat Act of 1940 was substituted for and repealed the Act of June 9, 1910, which was the Motor Boat Act of 1910. If the above-quoted paragraph of Section 526q is to have any meaning, it is that of confirming the conclusion above noted with reference to Section 361. This is supported by the committee report which submitted the Motor Boat Act of 1940, H.R. No. 828, Seventy-sixth Congress, First Session, which, in referring to the quoted paragraph of Section 526q states:

"The draft bill proposed to repeal the Act of June 9, 1910, and substitute the provisions of that act. It was not the intention of this bill to subject motorboats to all of the provisions of title 52 of the Revised Statutes, requiring inspection, manning by licensed officers, etc. * * *."

 It thus appears that it was not the intent of Congress that the Steamboat Inspection Laws should apply to the motorboats that are defined in the Motor Boat Act of 1940.

 However, the Commandant of the Coast Guard is not a party to this action and it is my opinion that he is a necessary party; and that this cause must be brought in such district as would have jurisdiction over the Commandant. Paolo v. Garfinkel, 3 Cir., 200 F.2d 280. I am further of the opinion that, since the plaintiff is shown to be in compliance with the requirements of the Steamboat Inspection Laws, there exists no justiciable controversy as contemplated by Sections 2201 and 2202, Title 28 U.S. C.A. Robeson v. Acheson, D.C.Cir., 198 F.2d 985.

For the reasons last stated, I conclude that plaintiff's action must fail.