**Benjamin F. AMOS, Appellant,**

v.

**James R. SHELTON, Appellee.**

**No. 83–1112.**

District of Columbia Court of Appeals.

Argued April 26, 1984.

Decided Aug. 30, 1985.

---

Benjamin F. Amos, Washington, D.C., appellant pro se.

Carol S. Rabenhorst, Washington, D.C., with whom Leonard C. Greenebaum, Washington, D.C., was on brief, for appellee.

Before PRYOR, Chief Judge, and TERRY and ROGERS, Associate Judges.

TERRY, Associate Judge:

Appellee Shelton, a Pennsylvania resident, brought this action to enforce a judgment he had obtained in Pennsylvania against appellant Amos, an attorney and a resident of the District of Columbia. The trial court granted summary judgment for Shelton. Amos appeals, contending that this action was barred by *res judicata*. We disagree and affirm.

### I

This case arises from an action for malicious prosecution which Shelton filed against Amos and several others in 1969 in the Court of Common Pleas for Allegheny County, Pennsylvania. In 1973, following a non-jury trial, that court awarded Shelton $5,000 in damages against Amos. After the judgment had remained unsatisfied for almost a year, Shelton filed suit against Amos in the Superior Court of the District of Columbia for enforcement of the Pennsylvania judgment. While that action was pending, Amos moved to reopen the proceedings in Pennsylvania. In May 1977 the Court of Common Pleas granted his motion and vacated the judgment.

About three weeks later Amos moved to dismiss the District of Columbia action with prejudice, on the ground that the judgment sought to be enforced had been vacated. Shelton opposed the motion, arguing alternatively that the action should be dismissed without prejudice. In July 1977 Judge Hannon of the Superior Court granted the motion to dismiss, but in his order he failed to say whether the dismissal was with or without prejudice, nor did he state any reasons for the dismissal.

Shelton's action against Amos in Pennsylvania went to trial again in the Court of Common Pleas in 1979, this time before a jury. After hearing the evidence, the jury awarded Shelton $50,000, which included $30,000 in punitive damages. The Pennsylvania Superior Court affirmed the judgment on that verdict in November 1981. *Shelton v. Evans*, 292 Pa.Super. 228, 437 A.2d 18 (1981). Amos did not appeal from that decision.[1]

---

1. The opinion of the Pennsylvania court summarizes the evidence on which the jury based its verdict. Shelton was the sole heir under the will of a lifelong friend who died in 1967. At the request of the executor of the decedent's estate, Shelton collected the rents on the estate's properties and deposited them in a special bank account. The executor also transferred an automobile from the estate to Shelton. Amos, on a contingency fee basis, represented some relatives of the decedent who were asserting claims against the estate.

A few weeks after Shelton had given testimony in a lengthy deposition, a constable came to his home one evening with a warrant for his arrest. The warrant was based on four criminal complaints alleging wrongful conversion of the estate's assets, which had been signed by an elderly relative of the decedent. The constable allowed Shelton to call his attorney, who persuaded the constable that Shelton need not go to jail but would appear to answer the charges. At the ensuing hearing before a magistrate, the elderly relative offered no evidence to support her charges, and a month later they were withdrawn at Amos' request.

At the malicious prosecution trial, the Pennsylvania attorney who worked with Amos on the estate controversy testified that the woman who signed the complaint was uneducated, and had no understanding of the charges or of the criminal process. Further, he testified that he had learned of the charges from Amos, who took responsibility for gathering evidence against

Shelton filed a new complaint in the Superior Court of the District of Columbia in August 1982, seeking enforcement of this new judgment and submitting an exemplification of the Pennsylvania court record in accordance with D.C.Code § 14–501 (1981). Amos moved to dismiss the complaint on the ground that Judge Hannon's dismissal of the prior complaint in 1977 was *res judicata*. At the hearing on that motion, Judge Morrison expressed doubts that the prior dismissal would bar an action based on a new judgment. He did not decide this question, however; instead, he treated the motion as one for summary judgment, since both the motion and the opposition relied on documents outside the pleadings. Judge Morrison denied Amos' motion on the ground that the material facts were not established with sufficient clarity to enable him to grant it.

Shelton then filed his own motion for summary judgment, which Amos opposed on *res judicata* grounds. In ruling on this motion, Judge Doyle characterized the original enforcement action as prematurely brought. Citing *Werber v. Atkinson*, 84 A.2d 111 (D.C.1951), he observed that in such a case the proper course was to dismiss the complaint without prejudice, and concluded that this was "without question the action Judge Hannon took." Thus, he ruled, there was no *res judicata* bar to the present action. Finding no dispute as to the validity of the Pennsylvania judgment, Judge Doyle granted summary judgment for Shelton.

Amos' only contention on this appeal is that Judge Hannon's dismissal of the first action in 1977 was *res judicata* as to the second action, filed in 1982. He does not contest the validity of the Pennsylvania judgment.

## II

Super.Ct.Civ.R. 56(c) requires a trial court to grant summary judgment on motion "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In reviewing a decision on a summary judgment motion, this court must make an independent examination of the record and apply the same standard. *E.g.*, *Brown v. General Motors Acceptance Corp.*, 490 A.2d 1125, 1126 (D.C.1985); *Wyman v. Roesner*, 439 A.2d 516, 519 (D.C.1981). No question of fact is presented in this case. The only question before us is one of law: whether Judge Hannon's dismissal of the first enforcement action was *res judicata* requiring dismissal of the second action, which was based on a new judgment.

■ A defendant seeking dismissal of a complaint on *res judicata* grounds bears the burden of persuasion on two separate issues. First, he must demonstrate that the prior decision on which he bases his *res judicata* claim was a decision on the merits; second, he must establish that the earlier litigation was based on the same cause of action. *See, e.g.*, *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979); *Adams v. Jonathan Woodner Co.*, 475 A.2d 393, 396 (D.C.1984); *Goldkind v. Snider Brothers, Inc.*, 467 A.2d 468, 473 (D.C. 1983). In this case Amos has not met and cannot meet the second requirement, so that we need not consider whether he met the first; that is, we need not decide whether Judge Doyle was correct in his

---

Shelton. Affirming the award of punitive damages, the Pennsylvania court observed that Amos caused the elderly relative to "sign baseless criminal complaints against [Shelton]" and

"manipulated the legal system to frighten and humiliate [Shelton] ... deliberately, without provocation, and for personal gain." *Shelton v.*

conclusion that Judge Hannon's earlier ruling was a dismissal without prejudice.[2]

■ A judgment on the merits in the first enforcement action would not bar the second one unless the two cases arose from the same cause of action. The District of Columbia courts have not articulated a test for determining whether two cases are based on the same cause of action. *See, e.g., Goldkind v. Snider Brothers, Inc., supra,* 467 A.2d at 474 n. 11 (holding that a judgment in a prior foreclosure suit did not bar litigation of a claim based on agency principles because, *inter alia,* the two causes of action were "entirely different"). Instead, the courts have considered the nature of the two actions and the facts sought to be proved in each one. For example, in *Hamilton v. William Calomiris Investment Corp.,* 461 A.2d 466, 469 (D.C. 1983), this court rejected a tenant's assertion that the dismissal of a prior action for possession due to a defective notice to quit barred a subsequent possession action based on a new notice. In *Gullo v. Veterans Cooperative Housing Ass'n,* 106 U.S. App.D.C. 70, 269 F.2d 517 (D.C.Cir.1959), the court held that a judgment precluded a later action which was identical to the first "[i]n all its essential particulars." The identity of the two claims was not at issue in *Mitchell v. David,* 52 A.2d 125 (D.C. 1947), but this court remarked, in affirming a dismissal on *res judicata* grounds, that "the essence of the [second] action was exactly the same" as that of the first. *Id.* at 126. *See also Henderson v. Snider*

*Brothers, Inc.,* 439 A.2d 481 (D.C.1981) (en banc), a case controlled by Maryland law, in which this court applied Maryland's *res judicata* test: "[w]hen the parties are the same, and the essence of the claim and the evidence necessary to establish it are the same, *res judicata* applies." *Id.* at 484 (citations omitted).

■ Using the same type of fact-based analysis, we conclude that the two enforcement suits do not spring from the same cause of action. Obviously, the two judgments which Shelton has sought to enforce arose out of the same cause of action, Amos' malicious prosecution of him in Pennsylvania. But that cause of action is not germane to the enforcement suits. To gain enforcement of a foreign judgment, all that one must prove is the existence and validity of that judgment.[3] The two actions here were based on entirely separate judgments, entered six years apart. To prevail in the first, Shelton would have had to prove the validity of the first Pennsylvania judgment in 1973. To prevail in the second, Shelton had to prove the validity of the judgment after the retrial in 1979. As the events which triggered Shelton's rights of action in the two District of Columbia suits were different, so were the facts which he had to prove in order to prevail in each case. *Hamilton v. William Calomiris Investment Corp., supra.*

It is clear, then, that Judge Hannon's dismissal of the first enforcement action did not preclude the second action based on a new and different judgment, requiring new and different proof. Since the *res*

---

*Evans, supra,* 292 Pa.Super. at 235, 437 A.2d at 22.

**2.** We do have some doubts about Judge Doyle's reliance on *Werber v. Atkinson, supra.* In *Werber* this court reversed an award of contract damages after finding the action to have been brought prematurely. We ordered that the complaint be dismissed without prejudice, stating that this was the proper disposition of a prematurely brought suit. 84 A.2d at 113–114. This has nothing to do with the instant case. Even if we were to assume that the first enforcement action was premature (which it was not, since a valid judgment existed at the time the case was brought), *Werber* would stand only for

what Judge Hannon should have done; it does not help in ascertaining what Judge Hannon actually did.

**3.** Of course, the jurisdiction of the foreign court, as well as the freedom of its judgment from fraud and from any procedural defects, is open to challenge by the party seeking to avoid enforcement. *See, e.g., Rosenberg v. Itchcovitz,* 72 A.2d 466, 467 (D.C.1950). But the party challenging a foreign judgment bears a heavy burden. *In re Adoption of a Minor,* 94 U.S.App.D.C. 131, 133, 214 F.2d 844, 846 (D.C.Cir.1954), citing *Williams v. North Carolina,* 325 U.S. 226, 233–234, 65 S.Ct. 1092, 1096–97, 89 L.Ed. 1577 (1945).

*judicata* issue was the only question of law before Judge Doyle, there was no impediment to his grant of summary judgment for Shelton. That judgment is accordingly

*Affirmed.*

ROGERS, Associate Judge, concurring:

I agree with the result reached by the majority. However, since the dismissal of appellee's first lawsuit by Judge Hannon occurred after the first Pennsylvania judgment had been vacated, appellee's request for enforcement of that judgment had become moot. *See Robeson v. Acheson,* 91 U.S.App.D.C. 227, 228, 198 F.2d 985, 986 (1952) (when there is no subject matter upon which the judgment of a court can operate, the case is moot); *Spencer v. NLRB,* 548 F.Supp. 256, 258 (D.D.C.1982) (mootness "may occur when events transpiring after the challenged action obviate or preclude the possibility of meaningful relief"), *aff'd,* 229 U.S.App.D.C. 225, 712 F.2d 539 (1983), *cert. denied,* — U.S. —, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984); *cf. United States v. Munsingwear, Inc.,* 340 U.S. 36, 39–40 & n. 1, 71 S.Ct. 104, 106–07 n. 1, 95 L.Ed. 36 (1950) (when an issue has become moot while a case is pending a decision on the merits, the established practice is to reverse or vacate the judgment entered and remand for a dismissal). Therefore, I would hold that dismissal was not on the merits, and that appellee is not barred by *res judicata* from seeking to enforce the second Pennsylvania judgment.