Abraham GOLDKIND, et al., Appellants,

v.

SNIDER BROTHERS, INC., et
al., Appellees.

No. 82–1027.

District of Columbia Court of Appeals.

Argued May 24, 1983.
Decided Sept. 23, 1983.

reverse the award of summary judgment and remand the case for further proceedings.

## I

In February 1973 six doctors and their wives formed a partnership to purchase the Parkview Towers Apartments in Takoma Park, Maryland. The sellers of the apartments were Abraham and Helen Goldkind and Ely and Lena Weinkranz, appellants in the instant case. The broker for the transaction was Snider Brothers, Inc. Oliver A. Cowan, an employee of Snider Brothers, was also a partner in the purchasers' partnership.

The apartment building was purchased for $1,860,000. The purchasers assumed a $1,450,000 mortgage. They also paid $110,-000 in cash and tendered two deferred purchase money notes to the sellers, one for $249,222.54 (note # 1) and another for $50,-000 (note # 2). A commission of $75,000, consisting of $25,000 in cash and the $50,000 note # 2, was included in the sale price.

The partners soon became disenchanted with their investment. When they learned in July 1975 that the $50,000 note had been negotiated to their own partner, Cowan, as a commission on the sale, they stopped making payments on the note.[1]

In February 1976 the purchasers brought suit in the Superior Court of the District of Columbia against the sellers (the Goldkinds and Weinkranzes), Snider Brothers, Inc., and Cowan.[2] The complaint alleged that Cowan, as an agent of Snider Brothers, fraudulently induced the buyers to enter into a purchase agreement by representing to them that the investment was a good one, that they would be making a fixed, limited investment for the purpose of acquiring a tax shelter, that the property would be self-sustaining, that he (Cowan) would have no interest in the property other than that of a partner, and that he would

Michael A. Schuchat, Washington, D.C., with whom Diane P. Burka, Washington, D.C., was on brief, for appellants.

Elizabeth J. Haegelin, Washington, D.C., with whom Richard W. Galiher, Washington, D.C., was on brief, for appellees.

Before KERN, FERREN and TERRY, Associate Judges.

TERRY, Associate Judge:

Appellants contest two orders of the trial court, one granting appellees' motion for summary judgment and the other denying appellants' motion for leave to amend their cross-claim. The underlying claim on which the cross-claim is based was before this court in *Henderson v. Snider Brothers, Inc.*, 439 A.2d 481 (D.C.1981) (en banc). The facts in the instant case are largely the same as in *Henderson.* We affirm the denial of the motion for leave to amend, but we

1. The $50,000 note was eventually negotiated to Snider Brothers, Inc., and then to a separate entity, Snider Brothers, Inc., Profit Sharing Trust, which apparently still holds it.

2. Snider Brothers, Inc., Profit Sharing Trust was later added to the suit as a party defendant.

be receiving no commission from the sale. Appellants also alleged that the purchase price was $367,000 more than the fair market value of the property.

Three weeks later the trustees on the deed of trust instituted a foreclosure proceeding in a Maryland court. The purchasers did not contest the foreclosure.[3] At the ensuing public auction, the sellers bought the property back, subject to the existing encumbrances. The foreclosure sale was ratified by the court in April 1976. After the auditor's report was filed, the purchasers filed exceptions to it and apprised the Maryland court of the pendency of the fraud action in the Superior Court, requesting that any monies awarded to them in the fraud action be considered in reduction of any deficiencies on the promissory notes.

In March 1977 the Maryland court modified and ratified the auditor's report, which found deficiencies of $162,764.14 on note # 1 and $28,758.68 on note # 2. There was no appeal from either the final order approving the foreclosure sale or the order ratifying the auditor's report, as modified.

Thereafter, in the Superior Court fraud action, the sellers filed a cross-claim against their co-defendants, Snider Brothers and Cowan, alleging in their first count:

2. If Snider and/or Cowan made the representations as alleged by plaintiffs, said actions were not authorized by Goldkind and Weinkranz and were not within the scope of any engagement of Snider and/or Cowan.

3. Snider and Cowan are liable to Goldkind and Weinkranz for any amount due plaintiffs as a result of the representations allegedly made by them.

The intention of this count was apparently to indemnify the sellers for any wrongdoing on the part of their brokers. The cross-claim included a second count which stated in part:

6. If Snider and/or Cowan made the representations as alleged by plaintiffs, then said representations were in violation of the duty of good faith, loyalty and honest dealing which Snider and Cowan as agents owed Goldkind and Weinkranz.[4]

7. Defendants Snider and Cowan failed to disclose to Goldkind and Weinkranz that they had made representations such as are alleged in the Complaint of plaintiffs.

8. If the plaintiffs prove the allegation of the Complaint, then Snider and Cowan have forfeited any right to commission from Goldkind and Weinkranz.

9. Goldkind and Weinkranz paid in cash and by note to Snider the sum of $75,000, which amount Snider and Cowan have forfeited.

The latter count asserts a separate cause of action against the brokers, Snider Brothers and Cowan, seeking recovery of the commission paid by the sellers. Paragraph 8 seems to suggest, however, that liability for repayment of the commission under count two of the cross-claim may be premised upon a finding of seller or broker liability to the purchasers on the original claim of fraud.

The defendants Snider Brothers, Cowan, and Snider Brothers, Inc., Profit Sharing Trust then moved to dismiss the purchasers' complaint on the ground that the Maryland foreclosure proceeding was *res judicata* as to the subsequent fraud action. After initially denying the motion, the trial court, relying on the doctrine of collateral estoppel, granted the motion on the fraudulent inducement claims as to all defendants including Cowan, but denied Cowan's motion

---

3. Although the Goldkinds and Weinkranzes were not named as parties to the Maryland action, they were definitely interested parties as the holders of note # 1.

4. In appellants' answer to the amended complaint in the underlying fraud action, they "specifically den[ied] that Snider Bros., Inc., and/or

Oliver A. Cowan, Jr., were acting as their agents in the matters complained of in the Amended Complaint." Their assertion in the cross-claim appears to be directly to the contrary. This inconsistency should be resolved on remand.

to dismiss on the fiduciary duty and misrepresentation claims. Although the ruling on Cowan's motion was not a final judgment, the trial court, pursuant to D.C.Code § 11–721(d) (1981), certified that an immediate appeal from the ruling on Cowan's claim would advance the ultimate termination of the case. Cowan's appeal was consolidated by this court with the purchasers' appeal from the dismissal order. The trial court then stayed any further action on the suit pending resolution of the appeals.

A division of this court ruled in *Henderson v. Snider Brothers, Inc.,* 409 A.2d 1083 (D.C.1979), that the Maryland foreclosure decree did not collaterally estop the purchasers from subsequently claiming that they were fraudulently induced to purchase the apartment building, nor did it estop their claims against Cowan for breach of fiduciary duty and misrepresentation. That decision was reversed in part by the full court in *Henderson v. Snider Brothers, Inc.,* 439 A.2d 481 (D.C.1981) (en banc). The en banc court held that the purchasers were barred by *res judicata* from litigating their claim of fraud because they had failed to raise it in the Maryland foreclosure proceeding. However, the en banc court upheld the division's ruling that the action against Cowan for misrepresentation and breach of fiduciary duty, which arose from his handling of the partnership assets, was separate and distinct and therefore not barred by *res judicata.*

After the case returned to the trial court, Snider Brothers, Inc., Cowan, and Snider Brothers, Inc., Profit Sharing Trust moved for summary judgment on the sellers' cross-claim to recover the commission paid. That motion was granted by the court with the following explanation:

First, it appears to the Court as a procedural matter that the cross-claim as it is now articulated is beyond the scope of the proceedings which we have before us.

And, second, on the merits it appears to the Court and the Court does conclude that the defendants [appellees] are entitled to a judgment as a matter of law in that the cross-claimants are collaterally estopped by the proceedings which were held in Maryland to which they were party and as the Court is persuaded, they could have raised the matter which they seek to present here.

The court denied, at the same time, the sellers' motion for leave to file a motion to amend their cross-claim. The sellers appeal.

II

Appellants' primary claim on appeal is that the trial court erred as a matter of law in granting appellees' motion for summary judgment. We agree. The trial court erroneously held that the final judgment in the Maryland foreclosure proceeding collaterally estopped appellants from litigating the agency issues raised in their cross-claim. Before we reach the merits of that ruling, however, we must first address appellants' contention that the failure of appellees to raise the issues of collateral estoppel and *res judicata* in their answer to the cross-claim constituted a waiver of those defenses.

It is well established that under FED.R. CIV.P. 8(c), an affirmative defense must be specifically pleaded, and that the failure to raise affirmative defenses constitutes a waiver of those defenses. *See generally* 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1278 (1969), and cases cited therein. Therefore, a party who attempts to raise an affirmative defense for the first time on appeal will be barred.[5]

Several courts, however, have created an exception to mitigate the harsh effects of Rule 8(c) when the affirmative defense has been raised by a pretrial motion rather than by the answer. *Westwood Chemical Co. v.*

---

5. *See, e.g., Nevels v. Hanlon,* 656 F.2d 372 (8th Cir.1981); *Hernandez v. City of Lafayette,* 649 F.2d 336 (5th Cir.1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982); *Exxon Corp. v. Texas Motor Exchange of Houston, Inc.,* 628 F.2d 500 (5th Cir.1980), all barring claims based on *res judicata.*

*Kulick,* 656 F.2d 1224, 1227 (6th Cir.1981) (*res judicata* defense raised not in a pleading but in a motion to quash a subpoena was properly before the court); *Funding Systems Leasing Corp. v. Pugh,* 530 F.2d 91, 96 (5th Cir.1976); *Radio Corp. of America v. Radio Station KYFM, Inc.,* 424 F.2d 14, 17 (10th Cir.1970); *Williams v. Murdoch,* 330 F.2d 745, 749 (3d Cir.1964) (defense of *res judicata* may be raised either by answer or by motion to dismiss); *Tucker v. Arthur Andersen & Co.,* 87 F.R.D. 124, 127 (S.D.N. Y.1980); *Weston Funding Corp. v. Lafayette Towers, Inc.,* 410 F.Supp. 980, 982 n. 2 (S.D.N.Y.1976), *aff'd,* 550 F.2d 710 (2d Cir. 1977) ("in the interests of efficient and expeditious judicial administration, the defense of *res judicata* can be raised and considered at the pretrial stage" in a motion for summary judgment). These cases hold that when an affirmative defense is raised by motion at the pleading stage, courts will generally ignore the technical requirements of Rule 8(c) and allow the defense to be litigated. "This procedure obviates the danger that the assertion of an affirmative defense by motion ... might deprive plaintiff of an adequate opportunity to present arguments rebutting the defense." 5 C. WRIGHT & A. MILLER, *supra,* § 1277 at 331 (footnote omitted). In *Diaz-Buxo v. Trias Monge,* 593 F.2d 153, 154–155 (1st Cir.), *cert. denied,* 444 U.S. 833, 100 S.Ct. 64, 62 L.Ed.2d 42 (1979), the First Circuit followed this approach:

> Here, plaintiff had ample opportunity to respond to defendants' motion as she in fact did in her lengthy motion in opposition to defendants' motion to dismiss .... As there was no prejudice to plaintiff resulting from the procedural format in which the issue of *res judicata* was considered, we do not find it to be reversible error for the district court to have

entertained the issue by motion in these circumstances.

*See also Willis v. Fournier,* 418 F.Supp. 265, 267 (M.D.Ga.), *aff'd,* 537 F.2d 1142 (5th Cir.1976) (failure to plead collateral estoppel in answer pursuant to Rule 8(c) was not fatal because "both parties after being informed of this issue by the court submitted briefs and thus no prejudice has resulted to the plaintiff by defendant's noncompliance with this rule"); *Beall v. Kearney & Trecker Corp.,* 350 F.Supp. 978, 981 (D.Md.1972) (even though *res judicata* was not raised in the pleadings, it would be considered by the court because both parties had briefed the issue).

Although these are federal cases interpreting a federal rule, we find them persuasive and adopt their reasoning. We have repeatedly held that when a local rule and a federal rule are identical,[6] we may look to federal court decisions interpreting the federal rule as "persuasive authority in interpreting [the local rule]." *Vale Properties, Ltd. v. Canterbury Tales, Inc.,* 431 A.2d 11, 13 n. 3 (D.C.1981) (citations omitted). Local precedent is in fact consistent with the federal cases. In *Wright v. McCann,* 122 A.2d 334, 336 (D.C.1956), we held that a plaintiff who had prior actual notice of an affirmative defense not evident from the face of the defendant's answer had ample opportunity to address it on the merits and, accordingly, the affirmative defense would not be waived. Similarly, in the instant case both parties were well aware of the *res judicata* and collateral estoppel issues, having extensively briefed and argued them before the trial court.[7] Because appellants were fully aware of these affirmative defenses and because they had ample opportunity to respond, appellants cannot claim to have been prejudiced by appellees' failure to plead these defenses specifically in their answer to the cross-claim. Accordingly, it

---

**6.** Super.Ct.Civ.R. 8 is identical to Fed.R.Civ.P. 8.

**7.** In appellees' supplemental points and authorities in support of their motion for summary judgment, they specifically requested leave of court to amend their answer to include the

defenses of *res judicata* and collateral estoppel. This request reflects appellees' effort to place these issues before the court and is sufficient in itself to establish that appellants had actual notice of these defenses.

was proper for the trial court to consider these defenses in ruling on the motion for summary judgment.[8]

### III

The doctrine of collateral estoppel precludes a party from relitigating issues or facts actually litigated and necessarily decided in an earlier proceeding based on a different cause of action. *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979); *Taylor v. England,* 213 A.2d 821, 823 (D.C. 1965); *Owen v. Simons,* 134 A.2d 92, 94 (D.C.1957); *Tutt v. Doby,* 148 U.S.App.D.C. 171, 173, 459 F.2d 1195, 1197 (1972); *Texaco, Inc. v. Hickel,* 141 U.S.App.D.C. 203, 212, 437 F.2d 636, 645 (1970). The elements of collateral estoppel are well stated in 1B MOORE'S FEDERAL PRACTICE ¶ 0.443[1], at 3901 (2d ed. 1982):

> Among the requirements courts have set out in order that collateral estoppel may apply are the following. The issue to be concluded must be the same as that involved in the prior action. In the prior action, the issue must have been raised and litigated, and actually adjudged. The issue must have been material and relevant to the disposition of the prior action. The determination made of the issue in the prior action must have been necessary and essential to the resulting judgment. [Footnotes omitted.]

If all of these elements are not present, there can be no collateral estoppel. *Id.* at 3902.[9]

A review of the pleadings, orders, and decrees in the Maryland foreclosure proceeding reveals that the agency issues raised in appellants' cross-claim were never mentioned in the Maryland court. Thus appellees cannot maintain that those issues were actually litigated. Nor can it be said that the issue of the duties owed by an agent to his principal was necessarily decided by the Maryland proceeding. A claim based on breach of an agency relationship is irrelevant to a foreclosure proceeding. Therefore, the doctrine of collateral estoppel raises no bar to appellants' cross-claim here.[10]

Appellees argue that even if there was no collateral estoppel, appellants' cross-claim was barred by *res judicata.* We disagree.

Under the doctrine of *res judicata,* a prior judgment on the merits raises an absolute bar to the relitigation of the same cause of action between the original parties or those in privity with them. *Montana v. United States, supra; Parklane Hosiery Co. v. Shore, supra; Taylor v. England, supra; Owen v. Simons, supra.* Contrary to appellees' assertion, the Maryland foreclosure proceeding had no *res judicata* effect on appellants' cross-claim. Snider Brothers, Inc., was not a party to the Maryland proceeding, and hence that suit could have no

---

**8.** This result is consistent with the Supreme Court's view that "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957) (citation omitted).

**9.** In our first opinion in *Henderson v. Snider Brothers, Inc., supra,* 409 A.2d at 1086, we remarked that many courts, including our own, have inadvertently used two different standards: "actually litigated *and* necessarily decided" and "actually litigated *or* necessarily decided." Careful analysis of the case law makes clear that "and" is the correct conjunction. The standard is as Moore states it.

**10.** The trial court may have confused the doctrine of collateral estoppel with that of *res judicata,* which bars relitigation of not only those matters *actually* litigated but also those which *might have been* litigated in the first proceeding. *Montana v. United States, supra; Parklane Hosiery Co. v. Shore, supra; Taylor v. England, supra; Owen v. Simons, supra.* In order for collateral estoppel to apply, the issues barred must have been actually litigated and necessarily decided in the former proceeding. See note 9, *supra.* Because that did not happen here, there can be no collateral estoppel.

*res judicata* effect upon it.[11] Although Cowan was a party to the foreclosure proceeding, the judgment in that case has no *res judicata* effect upon him because the causes of action in the two suits are different. The foreclosure suit was based on the sale of the apartment building and the claim that money was due and owing on the two purchase money notes. The cross-claim in the instant case raises questions of agency law arising from the contractual relationship between the sellers and their broker. The two causes of action have nothing in common, and therefore *res judicata* does not bar appellants' cross-claim.[12]

## IV

After the dismissal of the purchasers' fraud action was affirmed by the en banc decision in *Henderson,* the sellers sought leave of the trial court to amend their cross-claim against Snider Brothers and Cowan.[13] Paragraph 8 of the cross-claim states:

> 8. If the plaintiffs prove the allegation of the Complaint, then Snider and Cowan have forfeited any right to commission from Goldkind and Weinkranz.

The sellers moved for leave to amend it to read as follows:

> 8. Snider and Cowan have forfeited any right to commission from Goldkind and Weinkranz.

The denial of the sellers' motion is now assigned as error.

 The decision to grant or deny a motion to amend, pursuant to Super.Ct. Civ.R. 15(a), is a matter within the discretion of the trial court and will not be disturbed on appeal absent a showing of abuse. *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Eagle Wine & Liquor Co. v. Silverberg Electric Co.,* 402 A.2d 31 (D.C.1979); *Eskridge v. Jackson,* 401 A.2d 986 (D.C.1979). We find no abuse of discretion here, and thus we affirm the denial of appellants' motion for leave to amend.[14] That denial, however, has no effect upon appellants' ability to prosecute their claim for breach of fiduciary duty. The second count of appellants' cross-claim, even in its unamended form, provides a sufficient basis upon which to proceed to trial on the merits. Construing paragraph 8 so as to do "substantial justice," Super.Ct.Civ.R. 8(f), we hold that the subordinate clause is merely surplusage; the liability of Snider Brothers and Cowan, if any, does not depend on whether "the plaintiffs prove the allegation of the Complaint . . . ." Appellants are thus free to go forward on their cross-claim as it now stands and to offer whatever proof they may have to support it.

*Affirmed in part, reversed in part, and remanded.*

---

**11.** Even if Snider Brothers were deemed to be in privity with one of the parties to the foreclosure proceeding, appellants' cross-claim against Snider Brothers would not be barred by *res judicata* for the additional reason that the cross-claim is entirely different from the Maryland cause of action. In other words, what we say hereafter with respect to Cowan applies to Snider Brothers as well.

**12.** Because the cross-claim is directed only against Snider Brothers, Inc., and Cowan, we need not decide whether Snider Brothers, Inc., Profit Sharing Trust is within its reach. If it is, however, the Profit Sharing Trust cannot raise the defense of *res judicata* for the same reasons that preclude Cowan and Snider Brothers, Inc., from raising it.

**13.** Leave of court was required because an answer to the cross-claim had already been filed. *See* Super.Ct.Civ.R. 15(a).

**14.** The trial court entered an order setting a deadline for the filing of all motions concerning the cross-claim. Appellants did not meet that deadline, nor did they offer any explanation for the tardiness of their motion.